UNITED STATES of America

v.

Carl JACKSON, a/k/a "Better Days",
Carl Jackson, Appellant.

No. 87–1709.

United States Court of Appeals,
Third Circuit.

Argued Feb. 7, 1989.

Decided July 11, 1989.

Rehearing and Rehearing In Banc
Denied Aug. 3, 1989.

Joseph M. Gontram (argued), McBride, Ruch & Gontram, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Chief of Appeals, Joseph T. Labrum, III (argued), Asst. U.S. Attys., Philadelphia, Pa., for appellee.

Before SLOVITER, BECKER, and WEIS, Circuit Judges.

## OPINION OF THE COURT
SLOVITER, Circuit Judge.

## I.

### Introduction

Appellant Carl Jackson was convicted on a multi-defendant, multi-count indictment arising out of a widespread conspiracy to import Phenyl–2–Propanone (P–2–P), a controlled substance, and to manufacture and distribute methamphetamine. Jackson was convicted of one count of conspiracy in violation of 21 U.S.C. § 846 (1982) (Count One), one count of importation of P–2–P in violation of 21 U.S.C. §§ 952(a) (Supp.1987), 960(a) & (b)(2) (1982 & Supp.1987) (Count Two), three counts of possession of P–2–P with intent to manufacture methamphetamine (Counts Three, Twelve, Thirteen), one count of possession of methamphetamine (Count Ten), and three counts of manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1) (1982) (Counts Five, Six, Nine). Finally and most significantly for purposes of this appeal, Jackson was convicted of conducting a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 (1982 & Supp.1987) (Count Forty).

Jackson received a life sentence without parole on Count Forty, the CCE charge, and a $100,000 fine. Jackson received a five-year sentence on Count One, which merged with the sentence on Count Forty. On each of Counts Two, Three, Five, Six, and Nine he received five-year sentences to run consecutively with each other and to run concurrently with the sentence on Count Forty. Jackson also received a $15,000 fine on each of these counts. On each of Counts Ten, Twelve, and Thirteen Jackson received five-year sentences to run concurrently with each other and concurrently with the sentences on Counts Two, Three, Five, Six, and Nine.

On this appeal, Jackson contests only the convictions on Counts Five, Six, and Forty. His challenge to Counts Five and Six is that the government failed to prove that the conduct charged in those counts occurred within the relevant limitations period. The more serious challenge, directed toward his conviction on the CCE charge, is that the district court erred by failing to give a specific unanimity instruction regarding a statutory element of the CCE charge.

## II.

### Facts

The government produced overwhelming evidence of Jackson's involvement in the importation of P–2–P and the manufacture and distribution of methamphetamine between 1981 and 1984. Of relevance to this appeal is Jackson's role in the importation of a "drum" of P–2–P from Canada. The government produced substantial evidence that Jackson arranged to have a co-conspirator, Richard Coccoli, ship 200 kilograms of P–2–P from Germany to Canada, and that Coccoli received the P–2–P on April 20 or 21, 1982. Jackson and other co-conspirators, including customs agent David Steinkamp, traveled to Canada and transported the P–2–P to the Philadelphia area on or about April 23, 1982. Rudolph Bors testified that he "cooked" some of the P–2–P obtained from Canada on the upper floor of a building housing a flower shop located in Philadelphia, producing 45 pounds of methamphetamine. This "cook" formed the basis of Count Six. Bors also testified that he subsequently supervised a "cook" at the residence of Albert Kessler, which became the basis for Count Five.

The government produced evidence that Jackson supervised the individuals involved in the transactions described above, as well as numerous other individuals in the transactions which formed the basis of the other substantive counts. There was sufficient evidence that at varying times during the conspiracy Jackson exercised supervisory or managerial authority over more than twenty individuals. The indictment identified at least thirteen individuals who allegedly acted under orders from Jackson.

## III.

### Discussion

#### A.

### Unanimity

Jackson's most substantial argument on appeal challenges his conviction on

Count Forty of conducting a continuing criminal enterprise. The CCE statute provides in pertinent part that:

> For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—
>
> > (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
> >
> > (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
> >
> > > (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
> > >
> > > (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(b) (1982) (currently codified at 21 U.S.C.A. § 848(c) (Supp.1989)).

Jackson requested that the trial judge instruct the jury that it could return a conviction on the CCE count only if "all twelve members of the jury agree on the same five or more such persons." App. at 78. Although the trial court clearly instructed the jury that the government must prove beyond a reasonable doubt that Jackson occupied a position as an organizer, a supervisory position or position of management with respect to five persons, it declined to give Jackson's requested instruction. Instead, it gave only a generalized unanimity instruction: "The verdict must be unanimous. You must all agree." App. at 628.

Jackson argues that juror unanimity is a constitutional requirement and that the identity of the five subordinates is an element of the CCE offense. Therefore, he continues, because the government had identified more than twenty people as be-ing Jackson's subordinates,[1] the jury could have reached a guilty verdict without unanimous agreement. as to which individuals Jackson had actually managed.

We note as an initial matter that those circuits which have considered this precise issue have declined to require that the district court give a specific unanimity instruction as to the identities of the five or more underlings required to sustain a CCE charge. *See United States v. Tarvers*, 833 F.2d 1068, 1073–75 (1st Cir.1987); *United States v. Markowski*, 772 F.2d 358, 364 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). *See also United States v. Raffone*, 693 F.2d 1343, 1347–48 (11th Cir.1982), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983) (absent a request to do so trial court's failure to give such an instruction was not plain error). In fact, the First Circuit upheld a jury charge that explicitly stated that the jurors did not have to agree unanimously on the identities of the five persons involved. *See Tarvers*, 833 F.2d at 1074. The rationale of these cases is that there is no unanimity requirement as to "specific fact[s] underlying an element," *id.*, and that the CCE statute itself is only concerned with the size of the enterprise, not the identities of the underlings, *Markowski*, 772 F.2d at 364.

Although we are persuaded by the commonsense rationale articulated by the First and Seventh Circuits, we are bound to analyze this issue in light of our own case law on unanimity. Our analysis begins with the generally established principle, which we have previously enunciated, that, "[i]n the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *United States v. Beros*, 833 F.2d 455, 460 (3d Cir.1987) (citations omitted).

---

**1.** In a supplemental memorandum to this Court, the government argues that the testimony established that Jackson had the requisite authority over thirteen people. Jackson in his supplemental memorandum, contends that the government presented evidence at trial that sixteen other persons were Jackson's subordinates. For the purposes of the issue addressed above, it is not important to fix the precise number of persons whom the government contended at trial were Jackson's subordinates because there seems to be no dispute that the jury may not have agreed on the identities of five subordinates in either event.

In *Beros,* however, we qualified this general principle by holding that where the complexity of a case or other factors create the potential for confusion as to the legal theory or factual basis which sustains a defendant's conviction, a specific unanimity instruction is required. *Id.* at 460–63. In that case, because the government charged several criminal acts, any of which alone could have supported the offense charged, and the trial court's instruction failed to provide sufficient guidance to assure that all members of the jury were unanimous on the same act or acts of illegality, we held that the district court committed reversible error by refusing defendant's request for a unanimity instruction.

Thereafter, in *United States v. Echeverri,* 854 F.2d 638, 643 (3d Cir.1988), we relied on *Beros* in holding that where the government based its CCE charge on a continuing series of three drug-related offenses, and there was evidence tending to show numerous alleged violations, any three of which could have been the focus of a particular juror, the district court's general unanimity instruction was insufficient. We stated that with respect to judicially as well as statutorily imposed elements of offenses "[a] defendant is entitled to have the court insist on unanimous agreement as to all essential elements of the crime charged." *Id.*

Defendant does not argue, and indeed there is no authority that would require, that jurors must be unanimous as to the evidentiary basis for their decision. If we read the broad language of *Echeverri* as requiring unanimous agreement as to the identities of the persons supervised in a CCE charge, there would be no principled reason not to require such an instruction as to virtually every factual element in any conspiracy count, including the identities of co-conspirators and the overt acts. Jackson has cited no cases holding that unanimity as to these elements has ever been required in this or any other circuit, nor has our independent research uncovered any authority so holding. To the contrary, this court's jurisprudence discourages special verdicts in criminal cases, *United States v. Riccobene,* 709 F.2d 214, 228 n. 19

(3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983), which would be the logical progression were we to require that the jury must agree on each subsidiary component of a charged offense.

Our holdings in both *Beros* and *Echeverri* proceeded from the premise, articulated in *United States v. Gipson,* 553 F.2d 453, 457–58 (5th Cir.1977), that "[t]he unanimity rule ... requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." It follows that the proper focus of our unanimity analysis is on the defendant's conduct, *i.e.,* defendant's performance of culpable acts. We have never required that jurors be in complete agreement as to the collateral or underlying facts which relate to the manner in which the culpable conduct was undertaken.

As the First and Seventh Circuits explained in *Tarvers* and *Markowski,* the five or more persons requirement of a CCE offense simply defines the size of the enterprise. This establishes that the organization in which the defendant played a leadership role was sufficiently large to warrant the enhanced punishment provided by the CCE statute. *Cf. United States v. Aguilar,* 843 F.2d 155, 157 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988) (in enacting § 848, Congress was clearly concerned with " 'large-scale profit-making enterprises engaged in the illegal importation, manufacture and distribution of controlled substances.' " (*quoting United States v. Valenzuela,* 596 F.2d 1361, 1367 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979))). While the jury must reach a consensus on the fact that there were five or more underlings, which is an essential element of the CCE offense, there is no logical reason why there must be unanimity on the identities of these underlings. Unlike the three offenses necessary to constitute a series, which is the conduct which the CCE statute is designed to punish and deter, the identity of these underlings is peripheral to the statute's other primary concern, which is the defendant's exercise of the requisite

degree of supervisory authority over a sizeable enterprise.

The failure to give a specific unanimity charge in *Beros* and *Echeverri* left open the possibility that those named defendants could have been convicted without substantial agreement by the jurors as to what criminal acts they performed. In contrast, precise details such as the identities of the underlings are not an essential element of the CCE offense but merely historical facts as to which the jurors could have disagreed without undermining their substantial agreement as to the ultimate and essential fact of whether the requisite size and level of control existed. We therefore conclude that *Echeverri* does not require unanimity as to the identities of the underlings in a CCE charge. Accordingly, the district court did not err by failing to give the requested instruction.

Jackson argues that the unanimity charge as to the identities of the five persons was required here because this case presented complexity or potential for jury confusion comparable to that in *Beros* and *Echeverri*. We do not agree. In *Beros*, the requisite complexity inhered in the fact that alleged in two counts were four separate and distinct theories of criminal activity, embezzlement, abstraction, stealing and conversion, with each count enumerating several acts upon which a finding of guilt could have been predicated. *See* 833 F.2d at 461. We stated that "[w]hen the government chooses to prosecute under an indictment advancing multiple theories, it must prove beyond a reasonable doubt at least one of the theories to the satisfaction of the entire jury." *Id.* at 462. In *Echeverri*, the possibility for confusion arose on the CCE offense because there were "numerous alleged violations [of narcotics laws], any three of which could have been the focus of a particular juror," and because the indictment did not specify the

violations that allegedly constituted the "continuing" series. 854 F.2d at 643. We also noted in *Echeverri* that the district judge gave a special unanimity instruction regarding the predicate acts necessary to convict on a RICO count, from which the jury might have inferred that unanimity was not required on the constituent elements of the CCE count, thereby adding to the significant potential of jury confusion. *Id.*

▆ This case is not as complex, and is instead comparable to the type of routine case in which a special instruction is not required. *See United States v. Schiff,* 801 F.2d 108, 114–15 (2d Cir.1986), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987) (possibility of jury disagreement over whether defendant failed to make income tax returns, failed to pay income tax, or concealed or attempted to conceal income did not require specific unanimity instruction); *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir.1983) (fact that jurors may have disagreed on which acts of possession of a controlled substance defendant committed did not mandate a specific unanimity instruction). All that is in issue is whether the jury unanimously found that Jackson supervised the requisite number of people. Unlike *Beros,* this is not a case involving multiple theories and multiple factual scenarios.[2] In this case, there were no specific unanimity instructions given on other counts so there is no possibility that the jury drew negative inferences of the sort that were possible in *Echeverri*. The fact that the government presented evidence as to at least twenty-six alleged underlings does not make the case so complex that the general unanimity instruction was insufficient. Unlike *Echeverri,* the language of the indictment in this case did tend to focus the jury's attention on the

---

**2.** Although Jackson argues that the jury could have found that he was an organizer with respect to some subordinates, a supervisor with respect to others, and a manager with respect to others without finding five or more persons in any one of these categories, these three statutory words do not represent different theories. A defendant need not stand in the same relationship to each of five or more subordinates in order to be convicted under 21 U.S.C. § 848. *See, e.g., United States v. Possick,* 849 F.2d 332, 335–36 (8th Cir.1988); *United States v. Phillips,* 664 F.2d 971, 1034 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

status of certain individuals as Jackson's subordinates.

In light of our conclusions that there is no general requirement that the jury need be unanimous as to the identities of the underlings and that the circumstances of this case presented no reason to depart from that general rule, we need not consider the government's harmless error argument.

### B.

### *Statute of Limitations*

■ Defendant also argues that there was insufficient evidence from which the jury could have found that the manufacture of methamphetamine charged in Counts Five and Six occurred within the relevant five-year statutory limitations period. *See* 18 U.S.C. § 3282 (1982). The indictment in this case was returned on April 21, 1987, and Counts Five and Six charged Jackson with the manufacture of methamphetamine on two occasions in or about May 1982, well within the limitations period.

Jackson contends that evidence from government witnesses only showed that the events charged in Counts Five and Six occurred in the spring of 1982, and thus the conduct may have occurred outside the limitations period. Jackson's argument, however, fails to take account of the substantial evidence presented by the government that the P–2–P involved in the manufacture alleged in Counts Five and Six was smuggled into the United States from Canada between April 21 and April 23, 1982.

Rudolph Bors, a government witness who was Jackson's cooker, although unable to state the exact date of the conduct charged in Counts Five and Six, testified that he was told that the P–2–P he used in the Count Six "cook" came from Canada and had been smuggled in with the help of a United States customs agent. Bors further testified that the "cook" charged in Count Five occurred after the "cook" in Count Six. The customs agent testified that he smuggled the P–2–P into the United States in April 1982, and that he was

only involved with Jackson on this occasion. Finally, Richard Coccoli, who had arranged for the shipment of the P–2–P from Germany to Canada, testified that he accepted delivery of the P–2–P on April 20 or 21, 1982.

The trial court charged the jury that in order to convict Jackson on Counts Five and Six, they must find that some act relating thereto occurred after April 21, 1982. The jury could have reasonably inferred from the evidence that because the P–2–P arrived from Canada on April 20 or 21, the manufacture charged in Counts Five and Six must have occurred after April 21, 1982, within the limitations period. Therefore, we reject Jackson's statute of limitations argument.

### IV.

For the foregoing reasons, we will affirm the judgment of conviction and sentence imposed by the district court with respect to Counts Five, Six, and Forty.