33 F.3d 63
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
George Erman DAGO, also known as Robert Duran, also known as
Paul Vigil, also known as George Battaglia,
Defendant-Appellant.
 No. 93-1042.
 United States Court of Appeals, Tenth Circuit.
 July 26, 1994.
 
 ORDER AND JUDGMENT[1]
 Before LOGAN and MOORE, Circuit Judges, and O'CONNOR, District Judge.[2]
 In an eighty-one count indictment, later reduced on the government's motion, the government brought drug trafficking charges against defendant George Dago and multiple codefendants. While most of his codefendants pled guilty, Mr. Dago went to trial and was convicted on all counts. The district court sentenced him to serve 360 months. Defendant appeals both his conviction and his sentence. Of the numerous issues raised for our review, two require reversal.
 The parties are aware of the facts of this case; therefore, given the nature of our disposition, we need not repeat them here. Instead, we shall summarily treat the arguments simply to disclose the rationale for our conclusions.
 The first issue requiring reversal is the matter of the drug conspiracy convictions. That those counts have been held to be lesser included offenses within the Continuing Criminal Enterprise (CCE) conviction is undisputed by the government. Accordingly, upon remand, the district court shall vacate the conspiracy convictions upon the specific conditions contained in United States v. Staggs, 881 F.2d 1546, 1548 (10th Cir.1989), cert. denied, 493 U.S. 1020 (1990).
 Next, the money laundering conspiracy conviction cannot stand because the indictment failed to allege an overt act. Unlike an indictment for a drug conspiracy defined in 21 U.S.C. 846, an indictment charging a conspiracy under 18 U.S.C. 371 must state an overt act. However, the government argues the insufficiency of the present indictment is cured because the necessary overt acts were alleged in other counts. We cannot accept this argument.
 The money laundering conspiracy, count 34, does not specifically incorporate the substantive counts as overt acts. Had that been the case, we would have a basis for accepting the government's argument. See United States v. Werme, 939 F.2d 108, 111 (3d Cir.1991), cert. denied, 112 S.Ct. 1165 (1992). The conviction on count 34 must be vacated.
 
 
 1
 We see no error arising from the remaining issues. We shall, however, address them briefly for the benefit of the parties.
 
 
 2
 There is no merit in defendant's argument concerning the validity of the wiretap request. It is obvious that an error was made in the assembly of the appropriate papers to present to the district judge for authorization, and it is equally obvious the judge ignored the oversight in granting authority to conduct the tap. However, an assistant attorney general who was authorized to approve the application for a wiretap did so. The application was not insufficient on its face, nor did the government lack actual authority to request the order. Therefore, the court acted properly in authorizing the wiretap. See United States v. Giordano, 416 U.S. 505, 527 (1974) (A court must suppress for "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the use of this extraordinary investigative device."); United States v. Chavez, 416 U.S. 562, 568-69 (1974).[3]
 
 
 3
 The defendant also challenges the district court's finding that the necessary information could not have been obtained through less intrusive means. Review is limited to the question of whether the issuing court could reasonably have concluded normal investigatory procedures appeared "unlikely to succeed." United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir.1989).
 
 
 4
 The government's affidavit set out that other investigative methods had been used and the wiretap was needed to fully discover the conspiracy and its members. Defendant argues the information gleaned from pen registers should have sufficed because the government already knew the identities of most of the conspirators. In addition, he maintains he was not difficult to surveil and that surveillance had already revealed where he would go prior to a drug transaction.
 
 
 5
 However, Mr. Dago concedes he would not permit agents to meet with him, but he offers there was evidence he was becoming more secure and would one day allow direct contact. Further, he asserts because he was eager to cooperate at the time of his arrest, it was likely, had he been arrested prior to the institution of the wiretap, he would have provided officials with the needed information. Under these circumstances, defendant maintains a wiretap was unnecessary because the critical information could have been obtained through less intrusive means.
 
 
 6
 In the government's affidavit, it noted Mr. Dago always dealt with intermediaries and would not meet with government agents. The government made a good faith effort in attempting other investigatory methods before resorting to the wiretap. Because the government need not exhaust all of its investigative methods, the claim of necessity was adequate. United States v. Apodaca, 820 F.2d 348, 350 (10th Cir.), cert. denied, 484 U.S. 903 (1987).
 
 
 7
 Defendant raises three issues concerning his conviction under the CCE statute. He first argues that his conviction should be reversed for insufficient evidence. Second, he maintains the government constructively amended the indictment by introducing evidence concerning uncharged members of the drug conspiracy. Third, defendant asserts the court erred in failing to specifically instruct the jury it must unanimously choose the five subordinates defendant supervised.
 
 
 8
 To convict under the CCE statute, the jury had to find Mr. Dago organized, supervised, or managed a criminal organization of five or more participants. 21 U.S.C. 848(c)(2)(A). We have said, "the operative concepts used in section 848 ... are not technical and we see no reason to give them other than their everyday meanings.' " United States v. Dickey, 736 F.2d 571, 587 (10th Cir.1984) (citation omitted), cert. denied, 469 U.S. 1188 (1985).
 
 
 9
 During the government's closing argument, the prosecutor listed approximately twenty people whom the defendant had supervised, including his wife and his sons. In contrast, defendant argues he was not a supervisor under the CCE statute but simply a supplier with a wide distribution network. While Mr. Dago concedes he would front drugs to his buyers, set his price, and make transactional arrangements, he maintains this type of relationship does not reflect any measure of organization or control. A mere buyer-seller relationship is insufficient to prove organization, management or supervision. United States v. Patrick, 965 F.2d 1390, 1396 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992).
 
 
 10
 Although the government has failed in its brief to point to those portions of the record supporting its claim of the size of the enterprise, it is still inferable Mr. Dago supervised at least five other persons. For example, the record supports the inference Mr. Molinaro was managed by defendant. Each time Officer Barnhill wanted to purchase cocaine, Mr. Molinaro would make a phone call to his supplier. Invariably, Mr. Dago would arrive at the scene. Mr. Molinaro would meet with Mr. Dago and, in turn, would supply Officer Barnhill with cocaine. From these facts, a jury could have reasoned that Mr. Molinaro was acting at Mr. Dago's direction.
 
 
 11
 Mr. Dago suggested the sales price for cocaine to John Entrup and told him how to "cut" the drug and store it in apartments rented under false names. In addition, the evidence indicates Mr. Dago controlled his wife, Karen Battaglia, and his half-brother, Mr. Suazo. Ms. Battaglia went to Kansas City at defendant's direction to deliver marijuana to Mr. Suazo. Implicit also is that Mr. Suazo, again at Mr. Dago's direction, came to Denver to pick up marijuana. Further, Mr. Dago instructed Mr. Suazo's wife to provide Ms. Battaglia with certain items. Finally, defendant employed at least two of his children to assist him in drug transactions. Numerous witnesses testified the children acted at Mr. Dago's direction.[4]
 
 
 12
 Because Mr. Dago concedes he controlled his wife and children, the jury need only have found two additional individuals to have been supervised by defendant to convict under the statute. Our review of the record satisfies us the government established defendant maintained supervisory authority over more than two others, notwithstanding the introduction of contradictory evidence by the defendant. Those conflicts were for the jury to resolve as matters of credibility, and it is evident the jury met its task.
 
 
 13
 Mr. Dago next contends the government constructively amended the indictment. The Fifth Amendment requires that a defendant only be tried on charges contained in an indictment issued by a grand jury. "A variance that broadens the indictment constitutes a constructive amendment and is reversible per se." United States v. Wright, 932 F.2d 868, 874 (10th Cir.), cert. denied, 112 S.Ct. 428 (1991). In contrast, a variance that does not rise to the level of a constructive amendment obligates the court to examine the entire record to determine whether the variance affected the substantial rights of the accused or whether it constituted harmless error. Id.
 
 
 14
 In arguing that there was constructive amendment of the indictment, defendant notes the indictment does not name his two children or Shawn Mahoney. Nonetheless, during trial the government introduced evidence concerning these individuals. Mr. Dago concedes that had he not been charged with CCE, evidence regarding these persons would have been admissible as res gestae. However, because defendant was charged and convicted of CCE, a critical element of which is that he supervised five participants, he maintains it is possible the petit jury considered the three uncharged individuals as participants. Under these circumstances, defendant asserts the charges were impermissibly broadened.
 
 
 15
 Once this case went to trial, all of the evidence, including the evidence concerning the three uncharged individuals, was admissible since it was inextricably intertwined with the charges in the indictment. United States v. Oles, 994 F.2d 1519, 1522 (10th Cir.1993). There is no rule that an indictment list all specific transactions or name all coconspirators. Further, there is no requirement that every factual detail developed at trial must be presented to the grand jury. United States v. Mobile Materials, Inc., 871 F.2d 902, 910 (10th Cir.1989), opinion supplemented on reh'g, 881 F.2d 866 (10th Cir.1989), cert. denied, 493 U.S. 1043 (1990).
 
 
 16
 In this case, defendant was given full discovery and the government's opening statement mentioned family members. More importantly, however, the five supervisees need not be named in the indictment to sustain a CCE conviction. United States v. English, 925 F.2d 154, 159 (6th Cir.), cert. denied, 501 U.S. 1211 (1991); United States v. Zanzucchi, 892 F.2d 56, 58 (9th Cir.1989) ("absent a specific showing of surprise or prejudice, there is no requirement that an indictment or a bill of particulars identify the supervisees in a CCE case.") (citation omitted). Because of these principles and defendant's prior notice, we do not regard the use of the additional individuals as an unconstitutional expansion of the indictment.
 
 
 17
 We now turn to Mr. Dago's third argument. During the course of trial, Mr. Dago sought to submit a jury instruction that stated, "You must also unanimously agree on which five or more people were organized, supervised or managed by the defendant...." The trial court rejected this instruction, reasoning it was unnecessary to specifically instruct the jury it must agree on which five people the defendant supervised or managed.
 
 
 18
 While sufficiency of instructions is a question of law reviewed de novo, where the defendant requests a unanimity instruction, the court reviews for abuse of discretion the fact that the trial court only gave a general instruction. United States v. Sasser, 971 F.2d 470, 477 (10th Cir.1992), cert. denied, 113 S.Ct. 1292 (1993). Defendant acknowledges most circuits have held a district court does not need to instruct the jury that it must decide unanimously which five people a defendant supervised. However, he points to an exception carved out by United States v. Jerome, 942 F.2d 1328 (9th Cir.1991).
 
 
 19
 In Jerome, the court held the failure to give jurors specific unanimity instructions on a continuing criminal enterprise count was plain error. While the jury was presented with persons the prosecution stated could count in making up five persons necessary to trigger the statute, on appeal the government conceded some of these people could not have been organized by the defendant. In such a case, the court held jurors must be given a specific unanimity instruction and the "failure of the court to so instruct was highly prejudicial, with a high probability of substantially affecting the verdict." Jerome, 942 F.2d at 1331. In the instant case, defendant notes two of the potential "supervisees" were acquitted, and thus could not have been considered by the jury.
 
 
 20
 In contrast, the government argues the statute makes relevant only the number and not the identities of defendant's coconspirators. United States v. Harris, 959 F.2d 246, 255 (D.C.Cir.), cert. denied, 113 S.Ct. 362 (1992); United States v. Moorman, 944 F.2d 801, 803 (11th Cir.1991), cert. denied, 112 S.Ct. 1766 (1992). Accordingly, it is only an unusually complex or confusing case that might require the giving of a unanimity instruction. United States v. Hager, 969 F.2d 883, 891 (10th Cir.), cert. denied, 113 S.Ct. 437 (1992).
 
 
 21
 Defendant's argument the court erred because two of the listed individuals were acquitted is not persuasive. First, the jury had eighteen other individuals to examine. Second, the same jury acquitted the two defendants; therefore, it is unlikely they considered those persons as part of the CCE. Third, if we adopt defendant's suggestion it would mean each time more than one individual was charged, the court would have to give a specific unanimity instruction in case one person was eventually acquitted. Fourth, because the court gave a general unanimity instruction, there was no error.
 
 
 22
 Mr. Dago next argues the trial court erred in denying a mistrial because the government presented evidence concerning both defendant's possession of a gun and his exploitation of his children. As a consequence, Mr. Dago contends the jury was "prejudiced" in its assessment of the CCE charge and "inflamed against him" due to his "misuse of the parent/child bond."
 
 
 23
 After a witness testified concerning Mr. Dago and a gun, defendant immediately objected, and the court sustained the objection. In addition, the court issued several limiting instructions and instructed the jury to disregard the statements.
 
 
 24
 The government concedes that the prosecutor overstepped his bounds by asking questions that elicited this testimony. However, as the district court noted, in light of the substantial evidence and testimony in this twelve-day trial, the statement linking Mr. Dago and firearms was insignificant. Further, the giving of curative instructions solved the problem. See United States v. Cardall, 885 F.2d 656, 668 (10th Cir.1989) ("The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice."). Moreover, we believe the government properly introduced evidence concerning defendant's children and their involvement in the drug transactions. While it may have been prejudicial for the jury to learn defendant had employed his own children in his criminal enterprise, after making the choice to do so, he cannot now claim the use of the evidence was unfair.
 
 
 25
 Indeed, Fed.R.Evid. 403 does not require that evidence admitted be non-prejudicial; rather, it demands the evidence be more probative than prejudicial. As evidence of the nature and scope of the criminal enterprise, the probative impact of this information outweighed the repugnant prejudicial effect it may have created.
 
 
 26
 We turn to defendant's claim the trial court erred in refusing to compel the testimony of his wife, Karen Battaglia. Prior to defendant's trial, Ms. Battaglia pled guilty to conspiracy to distribute cocaine and was awaiting sentencing. Her plea agreement provided she would not be required to testify against her husband. Nonetheless, Mr. Dago sought to call Ms. Battaglia as a witness in his favor. When she declined, citing both her marital privilege and her Fifth Amendment rights, the court refused to compel her testimony reasoning Ms. Battaglia had a realistic and justifiable fear of self-incrimination.
 
 
 27
 The Sixth Amendment guarantees a criminal defendant shall enjoy the right to have compulsory process for obtaining witnesses in his favor. In United States v. Henricksen, 564 F.2d 197, 198 (5th Cir.1977), the court found a plea agreement, which stated a codefendant could not testify in any manner about the defendant, violated defendant's due process rights. Defendant likens Ms. Battaglia's plea agreement to the agreement in Henricksen. See also United States v. Crawford, 707 F.2d 447, 449 (10th Cir.1983) ("[s]ubstantial governmental interference with a defense witness's decision to testify violates a defendant's due process rights"). He also argues that Ms. Battaglia's Fifth Amendment privilege was not adequately established. Thus, Mr. Dago concludes in refusing to require Ms. Battaglia to testify based on her assertion of her Fifth Amendment rights, the district court violated his rights under the Sixth Amendment.
 
 
 28
 A defendant confronting impending sentencing may have a reasonable basis to fear incurring additional criminal liability if forced to testify. United States v. Hernandez, 962 F.2d 1152, 1161 (5th Cir.1992). Further, "[i]t is well settled that a defendant's Sixth Amendment right of compulsory process to obtain witnesses in his favor must yield to a witness's Fifth Amendment privilege against self-incrimination." Id. This is not the exceptional case that calls for a deviation from the general rule that Sixth Amendment privileges must yield to the demands of the Fifth Amendment, as in this case the government did not prevent the wife from testifying as part of her plea agreement.
 
 
 29
 Defendant has raised issues related to his sentencing. He argues he qualifies for an offense level reduction for acceptance of responsibility. Prior to trial, he confessed to police and offered to cooperate. Defendant also maintains that during his trial he did not contest his factual guilt. Therefore, he contends the district court impermissibly denied a reduction based solely on the fact defendant chose to go to trial.
 
 
 30
 United States Sentencing Guideline 3E1.1(a) provides for a two-point reduction for a defendant's clearly demonstrated acceptance of responsibility. Appropriate considerations include the truthful admission of conduct comprising the offense, the truthful admission or refusal to falsely deny relevant conduct, and the timeliness of accepting responsibility. U.S.S.G. 3E1.1, App. Note 1(a), (h). In rare instances, a defendant can accept responsibility and still go to trial. U.S.S.G. 3E1.1, App. Note 2. For example, a defendant may still accept responsibility where he or she goes to trial to make a constitutional challenge to a statute. Id.
 
 
 31
 In this case, the trial court specifically found the defendant put the government to its burden of proof at trial by denying the essential factual elements of guilt. Further, although it is his right, defendant still contests his factual guilt on appeal. Accordingly, we hold the district court did not err denying the reduction.
 
 
 32
 Although conceding he did not raise this issue with the trial court, defendant argues the jury instructions improperly included counts 10, 14, 43, and 64 which the government omitted from its notice of counts for trial. The judgment and commitment order based the dismissal of counts on this notice. Though defendant received concurrent sentences at the low end of the guidelines, he also received special assessments based on these abandoned charges.
 
 
 33
 The government has no objection to vacating the assessments for these marijuana distribution convictions because assessments are not punishments, and the events underlying these convictions still constitute relevant conduct. It considers this mistake inadvertent. Given this concession, we believe the assessments should be vacated on remand.
 
 
 34
 The judgment is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [3]
 Moreover, most courts have adopted a standard which leaves room for minor errors in wiretap applications. See, e.g., United States v. Ianniello, 621 F.Supp. 1455 (S.D.N.Y.1985); United States v. Swann, 526 F.2d 147 (9th Cir.1975)
 
 
 [4]
 While defendant suggests his children should not be included in the CCE analysis, there is no legal basis for excluding Mr. Dago's children. See United States v. Patrick, 965 F.2d 1390, 1397 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992)