UNITED STATES of America, Appellee,

v.

Gary Ross ROCKELMAN, Appellant.

No. 94–2222.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1994.

Decided March 1, 1995.

Frank L. Burnette, II, Des Moines, IA, argued, for appellant.

Clifford D. Wendel, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Gary Ross Rockelman was convicted of engaging in a continuing criminal enterprise from January 1, 1967, to August 5, 1993, in

violation of 21 U.S.C. § 848; conspiracy to distribute cocaine or methamphetamine during this same period, *id.* § 846; distribution of methamphetamine, and possession with intent to distribute methamphetamine, *id.* § 841(a)(1); use of a communication facility to facilitate a felony, *id.* § 843(b); using or carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1); and money laundering, *id.* § 1956(a)(1)(B)(i). Rockelman was sentenced to 420 months imprisonment.

On appeal, Rockelman challenges the sufficiency of the evidence to support his convictions for participating in a continuing criminal enterprise, conspiracy, distribution of methamphetamine, the firearms count, and money laundering. He also claims that the district court erred in giving certain jury instructions and in refusing to give others; the jury rendered inconsistent verdicts; the district court erred by admitting evidence of flight to avoid prosecution; and he was denied due process with respect to his trial and his sentence. After a careful review of the record and the briefs and after hearing oral arguments, we affirm Rockelman's convictions except for the money laundering count, which we reverse.

## I. *Continuing Criminal Enterprise*

 The most difficult issue raised by Rockelman is whether there is sufficient evidence to sustain his conviction for engaging in a continuing criminal enterprise (CCE). If we affirm on this issue, it will not be necessary to consider the conspiracy count because cumulative punishment for the two counts would constitute double jeopardy in violation of the Fifth Amendment. *See United States v. Montanye,* 962 F.2d 1332, 1346–47 (8th Cir.) (citing *Jeffers v. United States,* 432 U.S. 137, 157, 97 S.Ct. 2207, 2219–20, 53 L.Ed.2d 168 (1977)), *cert. denied,* —— U.S. ——, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). To support a CCE charge, the government must prove "the commission of a continuing series of violations of federal narcotics law, in concert with five or more persons, by a person occupying a management or organizing position, who receives substantial income therefrom." *United States v. Becton,* 751

F.2d 250, 254 (8th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985); *see also United States v. Lewis,* 759 F.2d 1316, 1331 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985). Rockelman challenges only two elements of this definition: whether he acted in concert with five or more persons, with respect to whom he occupied a management or organizing position.

*Becton* discussed the required showing for the elements challenged here:

> We note that the supervisory relationship specified in the CCE statute need not have existed with regard to the five persons at the same time, that those five persons need not have acted in concert, and that the same type of supervision need not have been exercised over each person. Furthermore, the government need not prove that the supervisor had personal contact with each person. In addition, it is irrelevant that other persons ... may have exercised supervision superior to [the defendant's]. A defendant need not be the dominant organizer or manager of a criminal enterprise; the statute requires only that he occupy some managerial position.

751 F.2d at 254–55 (citations omitted); *see also Lewis,* 759 F.2d at 1331–33.

Rockelman asserts that his dealings with various persons during the course of his illegal activities were simply buyer/seller relationships and that he played no managerial role with respect to any of them. He also claims that the prosecution's strategy was to prove that Larry Wilhelm, who pleaded guilty and testified against the remaining defendants, was the manager/organizer, and then to attribute Wilhelm's managerial role vicariously to Rockelman simply because the two had dealings together.

 The record establishes that Rockelman played a managerial role with respect to at least five persons, without resort to any theory of vicarious responsibility. This court's opinion in *Lewis* discusses types of conduct by subordinates that support the CCE statute's "five person" requirement, including acting as a courier, assisting a courier, and relaying instructions for drug sales.

759 F.2d at 1332–33. Comparable conduct is present in this case. Larry Wilhelm testified that he and Rockelman paid Larry Langford, Bill Cassidy, and Augie Engle $1,000 each for each trip they took to California to pick up drugs for Rockelman and himself. He also testified that Steve Barrett and his wife began acting as couriers for Rockelman and him in 1990, and that he and Rockelman gave Danny Cline expense money to pick up drugs for them in Arizona. Jan Boley testified that she and Pam Elder weighed and packaged drugs for Rockelman, that Elder would sell the drugs and give the money to Rockelman, and that Elder counted money for Rockelman on many occasions. This testimony alone is sufficient to show that eight persons acted under Rockelman's direction and managerial authority in his drug enterprise. We are satisfied that the record supports Rockelman's conviction for engaging in a continuing criminal enterprise.

## II. *Jury Instruction on CCE*

Rockelman also argues that the CCE jury instruction was defective because the district court failed to include a "unanimity" requirement. The court instructed the jury as follows:

> The government does not have to prove that all five or more of the other persons operated together or at the same time, or in respect to the same offense, or that defendant Rockelman knew all of them. It is sufficient if it is proven that during the course of the commission of the continuing series of narcotic violations, defendant Rockelman organized, supervised or managed a total of five or more persons; that is, he exerted some type of influence over them as shown by their compliance with his directions, instructions, or terms.
>
> . . . . .
>
> The words "organizer," "supervisor" and "manager" should be given their every day meanings and are not to be interpreted in any technical sense.

Instruction No. 23.

Rockelman proposed that this CCE instruction be modified to add: "You must *unanimously agree on the identities of the five persons* you conclude were organized, supervised, or managed by defendant Gary ross [sic] Rockelman." (Emphasis added.) He based his request for a "unanimity" instruction on the Ninth Circuit opinion in *United States v. Jerome,* 924 F.2d 170, *amended,* 942 F.2d 1328 (9th Cir.1991).

■ We hold that the trial court properly refused the proposed "unanimity" instruction. Other circuits have held that the jury need not be so instructed. *See United States v. Dago,* 33 F.3d 63, 1994 WL 387836, at *5 (10th Cir.), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994); *United States v. Harris,* 959 F.2d 246, 255 (D.C.Cir.), *cert. denied,* ⸺ U.S. ⸺, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992); *United States v. Moorman,* 944 F.2d 801, 803 (11th Cir.1991), *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1766, 118 L.Ed.2d 427 (1992); *United States v. English,* 925 F.2d 154, 159 (6th Cir.), *cert. denied,* 501 U.S. 1210, 111 S.Ct. 2810, 115 L.Ed.2d 983 (1991); *United States v. Linn,* 889 F.2d 1369, 1374 (5th Cir.1989), *cert. denied,* 498 U.S. 809, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *United States v. Jackson,* 879 F.2d 85, 87–88 (3d Cir.1989); *United States v. Tarvers,* 833 F.2d 1068, 1074–75 (1st Cir.1987); *United States v. Markowski,* 772 F.2d 358, 364 (7th Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). We join the majority of circuits which hold that the jury need not unanimously agree on the identities of the five persons who were organized, supervised, or managed by the defendant.

We are persuaded by the rationale of those cases that the CCE statute is concerned with the size of the enterprise rather than the specific identity of the subordinates. *See, e.g., Jackson,* 879 F.2d at 87. The focus of the statute's "five or more other persons" requirement is to "establish[ ] that the organization in which the defendant played a leadership role was sufficiently large to warrant the enhanced punishment provided by the CCE statute." *Id.* at 88. We therefore find no error in the district court's refusal to give the jury a specific unanimity instruction.

## III. *Money Laundering*

█ To convict Rockelman of money laundering required proof beyond a reasonable doubt that (1) Rockelman purchased a cabin, (2) the purchase involved the proceeds of his illegal drug sales, (3) he knew that the cabin represented the proceeds of his illegal drug sales, and (4) he knew that the transaction was designed to conceal or disguise the nature, ownership, source, or control of the proceeds of his drug dealing. *See* 18 U.S.C. § 1956(a)(1)(B)(i).

Rockelman contends that the government failed to prove the "intent to conceal" element. He points out that the transaction was an open one, that he walked into the office of a realtor unknown to him, paid $16,765 in cash for the property, and had the title to the property put in the name of a company owned and controlled by him.

█ We agree that the evidence is insufficient to establish an intent to conceal. The parties' stipulation, which was read into the record at trial, states that realtor Dolly Murray showed the cabin to Tim Taylor and his girlfriend Diana Sherill. Taylor is the son of Pamela Elder, who was Rockelman's girlfriend during this period. Taylor and Sherill's $17,000 offer for the cabin was accepted, and Taylor informed the realtor that his uncle, Gary Rockelman, would be paying for the cabin at the closing. Rockelman appeared at the closing with a briefcase containing $16,765. Realtor Murray and Joann Cramer, one of the owners of the real estate company handling the transaction, counted the cash and prepared the deposit slip at the closing. Rockelman had the cabin put in the name of his company, R & R Electric and Appliances, Inc. Taylor and Sherill subsequently executed an installment sale contract with R & R Electric and Appliances. The cabin was never transferred to Taylor and Sherill, however, because they broke off their relationship soon afterward and did not make the payments.

There was obviously no attempt to conceal from the realtors Rockelman's identity, his ownership of the $16,765 in cash, his ownership of R & R Electric and Appliances, or his connection to Taylor and to this real estate transaction. Furthermore, as IRS Special Agent Steven Picray testified and as the relevant exhibits show, Rockelman's ownership of the company was a matter of public record, and the bills of sale transferring the cabin first to Rockelman's company and then from the company to Taylor and Sherill were on file at the county courthouse.

Application of the money laundering statute to these facts would "turn the money laundering statute into a 'money spending statute.'" *United States v. Sanders,* 928 F.2d 940, 946 (10th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991). "[T]he purpose of the money laundering statute is to reach commercial transactions intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds and that the proceeds used to make the purchase were obtained from illegal activities." *Id.* The government's brief contains not a single citation to any caselaw in the section discussing the money laundering count. It also does not cite anything in the record or transcript that establishes an intent to conceal, apart from the stipulation which we find does not support the government's position.

This straightforward real estate transaction and Rockelman's conspicuous connection with the property bought with the proceeds of his drug sales convinces us that the evidence here cannot support a finding that Rockelman had the necessary intent to conceal that would satisfy the money laundering statute. We therefore reverse Rockelman's conviction on this count and direct that it be vacated.[1]

## IV. *The Firearms Count*

Rockelman argues that the evidence is insufficient to sustain his conviction for using or carrying a firearm "during and in relation to" a drug trafficking crime. 18 U.S.C. § 924(c)(1). This firearms conviction added five years to his sentence. Rockelman con-

---

1. We note that this action will not affect Rockelman's term of imprisonment because the 240-month sentence imposed for this count was to be served concurrently with the 360-month sentence imposed for six other counts that we affirm today.

cedes that unloaded rifles were found in a gun rack in his residence following his arrest but claims that there is no evidence he ever used a gun to facilitate any of his drug transactions.

 This circuit has held that the statute is satisfied by "the mere presence and ready availability of a firearm where drugs are dealt." *United States v. Granados,* 962 F.2d 767, 772 (8th Cir.1992). It is not necessary for the weapon to actually have been used to "harm, intimidate, or threaten others." *Id.* The key inquiry is "whether the placement of the gun or guns suggests they would be quickly available for use in an emergency." *United States v. Sykes,* 977 F.2d 1242, 1248 (8th Cir.1992) (citation omitted). To that end, it is "inconsequential" that a firearm was located in a different room from where the drug transactions took place. *Id.*

It is undisputed that Rockelman kept guns in a gun rack in his bedroom. Rockelman testified that he kept drugs either in a chest of drawers in the bedroom or in a window sill. Jan Boley testified that she saw guns in Rockelman's home, in a closet with drug scales, and also saw guns next to drug paraphernalia in a pickup truck in which she and Rockelman had done a drug deal earlier in the day. This evidence is sufficient to show that firearms were readily available to Rockelman in the course of his drug transactions. We therefore affirm his conviction on this count.

### V. *Jury Instructions*

Rockelman argues that the trial court abused its discretion in refusing to give a specific instruction on the unreliability of accomplice testimony. He requested that the court give an Eleventh Circuit Model Jury Instruction that specifically instructs the jury to examine and weigh accomplice testimony with greater care and caution. Rockelman complains that the only corroboration of accomplice testimony here was by other accomplices. This circuit, however, has held that there is "no absolute and mandatory duty" to instruct a jury to consider even the testimony of an *un*corroborated accomplice with caution. *United States v. Schoenfeld,* 867 F.2d 1059, 1062 (8th Cir.1989) (citing *United*

*States v. Shriver,* 838 F.2d 980, 983 (8th Cir.1988)). We find no abuse of the court's discretion on this issue.

Rockelman's other challenges to the jury instructions do not have merit and do not require discussion here.

### VI. *Conclusion*

We have examined Rockelman's remaining arguments and are satisfied that there has been no error by the district court. We reverse Rockelman's conviction on the money laundering count. In all other respects we affirm the convictions.