**UNITED STATES of America**

v.

**BLYDEN, Anthony, Appellant in 90–3181.**

**UNITED STATES of America**

v.

**VAN PUTTEN, a/k/a Takou,**

**Allen Van Putten, Appellant in 90–3182.**

**Nos. 90–3181, 90–3182.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 3, 1990.

Decided April 16, 1991.

Hugh P. Mabe, III, Susan R. Via (argued), Office of the United States Atty., Charlotte Amalie, St. Thomas, V.I., Thomas E. Booth, U.S. Dept. of Justice, Crim. Div., Washington, D.C., Leonard B. Francis Jr. (argued), Charlotte Amalie, St. Thomas, V.I., for Blyden in No. 90–3181.

James L. Hymes, III (argued), Charlotte Amalie, St. Thomas, V.I., for Van Putten in No. 90–3182.

Before GREENBERG, COWEN and HIGGINBOTHAM,* Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Following their acquittal on several Virgin Islands charges arising from an alleged

---

* Honorable A. Leon Higginbotham, Jr., was Chief Judge at the time of oral argument in the above case but assumed Senior Judge status on February 1, 1991.

assault on May 19, 1989, Anthony Blyden and Allen Van Putten appeal the denial, by the District Court of the Virgin Islands, of their motion to dismiss a federal information arising from the same incident. Appellants argue that trial on the federal charges will violate the Double Jeopardy Clause because all of the crimes charged in the federal information are identical to the two gun possession charges prosecuted under Virgin Islands law for which they were acquitted. 740 F.Supp. 376. The district court held that appellants had waived their double jeopardy claim because they had precipitated the severance of the two trials. The court also considered appellants' double jeopardy claim and predicted that the claim would have failed in any case. Although it is a close question, we find that appellants "waived" their double jeopardy claim. Therefore, we will affirm the district court's order denying the motion to dismiss the federal charges.

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), as this is an appeal from an order of the district court denying appellant's motion to dismiss a criminal information on double jeopardy grounds.

## I. BACKGROUND

On May 20, 1989, appellants were arrested in St. Thomas and various firearms seized from them in response to a complaint that they had attempted to murder Clarence Husband and Parris Nicholas. On May 31, 1989, the United States Attorney for the District of the Virgin Islands filed a 10–count information, Criminal No. 1989–89, that charged appellants with violations of Virgin Islands law. The first six counts related to appellants' attempted murder of Husband and Nicholas on May 19, 1989;[1] the remaining four counts charged Van Putten with offenses relating to his separate assault on Husband on May 18, 1989.[2]

Shortly after appellants' arrest, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") conducted a federal investigation to determine whether appellants had violated federal firearms laws. The investigation revealed that Blyden was a fugitive, having fled from the state of New York in 1982 following his release on bail on first-degree robbery and related weapons charges. At a July 28, 1989 status conference, the prosecutor informed the district court[3] that it intended to file additional charges if the pending ATF report supported such action. The court directed the government that it had until August 4, 1989 to file any additional charges or else the "information would proceed as constituted." (Blyden App. at 5). By August 1, 1989, the ATF had conducted ballistics tests on the weapons and verified that Blyden and Van Putten were not authorized to transport or possess a machine gun. (Blyden App. at 9–12). On August 4, 1989, the United States Attorney filed a four-count information, Criminal No. 1989–119,

---

1. Count 1: attempted murder of Clarence Husband in violation of 14 V.I.C. § 922(a)(1); Count 2: attempted murder of Parris Nicholas in violation of 14 V.I.C. § 922(a)(1); Count 3: assault with intent to commit murder of Clarence Husband in violation of 14 V.I.C. § 295(1); Count 4: assault with intent to commit murder of Parris Nicholas in violation of 14 V.I.C. § 295(1); Count 5: unlawful possession of two unlicensed Colt .45 caliber pistols and an unlicensed Smith and Wesson 9mm pistol during the commission of a crime of violence, to wit, attempted murder, first degree assault and third degree assault in violation of 14 V.I.C. § 2253(a); Count 6: unlawful possession of an unlicensed 9mm machine gun and silencer during the commission of a crime of violence, to wit, attempted murder, first degree assault and

third degree assault in violation of 14 V.I.C. § 2253(b). (Blyden App. at 1–4)

2. At trial on the territorial information, the jury convicted Van Putten on two of those four counts. (Blyden App. at 89). Those offenses and their disposition are not relevant to this appeal.

3. At the time of trial and as of the time of writing this opinion, the District Court of the Virgin Islands is without a permanent judge and is staffed by judges from other jurisdictions sitting by designation. Judge J. Farnan presided over the pre-trial proceedings and the trial on the Virgin Islands charges. Judge S. Brotman considered the post-trial motion for dismissal of the federal charges.

against appellants, which alleged offenses in relation to the May 19, 1989 incident.[4]

On August 25, 1989, Blyden filed a motion to require the government to elect between one of the two informations and dismiss the other one on the grounds that the Virgin Islands gun possession counts were identical to the federal gun possession charges and thus placed him in danger of double jeopardy. (Blyden App. at 170–171). On November 7, 1989, the trial judge conducted an in-chambers conference prior to the trial scheduled for that day. The judge indicated that his understanding was that the government had consolidated the informations for simultaneous trial, in accordance with the practice in the District of the Virgin Islands, and was prepared to proceed to trial on both informations that day. Counsel for Blyden, Mr. Francis, pointed out that the government's motion for consolidation was still open and pending because a formal ruling consolidating the matters had not been made. According to Blyden's counsel, because there had been no formal ruling and because his client had not received a detention hearing regarding the later filed federal charges, he "really did not know" what action the court would be proceeding on that day and had assumed that the federal information would not proceed. (Blyden App. at 33–4). The district court then conducted an inquiry into the prejudice Blyden might suffer from a consolidated trial. The transcript indicates that the conversation included discussion of Blyden's double jeopardy arguments as well as the alleged prejudice before the jury on the Virgin Islands charges that would result from references to his fugitive status and aliases in the federal information:

THE COURT: What's the prejudice to Defendant Blyden from a consolidation?

MR. FRANCIS: Number one, in regards to [the] single sovereign, Mr. Bonner [the United States Attorney] is representing the Government of the Virgin Islands in 89–89 ... [and] is using the same evidence, the same facts, when in fact the Virgin Islands [and the United States] are one sovereign.

.    .    .    .    .

The question is by Mr. Bonner proceeding in this manner [it] *can only in fact result in prejudice to Mr. Blyden* after the evidence starts to unfold. It's two sovereigns when its only one in fact. [emphasis added].

THE COURT: So you want me to sever 89–89 from 89–119?

MR. FRANCIS: That is correct.

THE COURT: And Van Putten?

MR. HYMES: We basically join in the arguments of Blyden and suggest that appropriate remedy would be an election and dismissal of those cases which are not elected to be tried.

THE COURT: Okay. I'm making a ruling on that shortly.

(Blyden App. at 34, 36). The district court then went on to discuss the other motions before the court. The discussion proceeded as such until co-counsel for Blyden, Mr. Lapidus, returned the conversation to the question of whether to consolidate the two trials and the prejudice that might result to his client:

MR. LAPIDUS: ... Now, in 89–89, you have a charge just against Anthony Blyden. For per Anthony Blyden in 89–119, you have a charge [against] Anthony Blyden, also known as Michael Caines, also known as Robert Golden, and also known as Black something. So it's three a/k/a's after that name.

.    .    .    .    .

4. Count 1: Blyden, a/k/a Michael Caines, a/k/a Tony Blacks, being a fugitive from justice, and aided and abetted by Van Putten, possessed and received the following firearms that had been transported in interstate or foreign commerce: (1) a 9mm machine gun, (2) a silencer, (3) two loaded Colt .45 caliber pistols, and (4) a Smith and Wesson 9mm caliber pistol, in violation of 18 U.S.C. § 922(g)(2); Count 2: Blyden, a/k/a Michael Caines, a/k/a/ Tony Blacks, being under an indictment for a felony, and aided and abetted by Van Putten, received the same five firearms listed in Count I which had been shipped in interstate commerce, in violation of 18 U.S.C. § 922(n); Count 3: Appellants unlawfully possessed a machine gun, in violation of 18 U.S.C. § 922(*o*)(1); Count 4: Appellants carried a machine gun equipped with a silencer, during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

In 89–119 they are going to be permitted to bring up proof of at least what? Two, three, four other alleged crimes that Mr. Blyden is under indictment for under different names. There is a *severe prejudice* there.

. . . . .

We are now going to be defending not only the Blyden case under the name Blyden with the May 19 incident, but we are also going to be defending Blyden with two other cases out of the state of New York for other crimes in which those other cases the Government is going to be introducing. . . .

THE COURT: Your problem is the created prejudice in dual—in consolidated prosecution.

(Blyden App. at 42–44) (emphasis added).

Following the conference in chambers, the trial judge issued a ruling from the bench that the case would proceed only on the Virgin Islands allegations. The federal allegations " . . . will be subject to prosecution subsequently if the Government chooses to. In effect, I have forced an election on the Government by severing." (Blyden App. at 48). The transcript does not indicate that either party registered any objections to the trial court's ruling.

Appellants were tried by jury and found not guilty on the six counts of the Virgin Island charges that they had in common. Their defense was that they had been kidnapped by the alleged victims and that the guns were in the possession of the victims rather than the defendants. (Blyden App. at 136). After their acquittal, appellants filed a motion to dismiss the federal charges arguing that the government was collaterally estopped from attempting to prove that they had illegally possessed firearms in violation of federal law. The acquittal, appellants argued, showed that the jury accepted their version of the events of the night in question. They also argued that they would be subject to double jeopardy. The district court concluded that appellants caused the severance and therefore waived their double jeopardy claims.

*United States v. Blyden,* 740 F.Supp. 376, 378 (D.V.I.1990).[5] The court also considered, without deciding, the double jeopardy claim and found that the federal and local statutes were not the same for purposes of double jeopardy nor was the government collaterally estopped from attempting to prove that appellants possessed the guns at issue. *Id.* at 380. We turn now to consider the question of whether appellants waived their right to argue that trial on the federal charges would constitute double jeopardy.

## II. DISCUSSION

■ The government urges that appellants have waived their right to claim double jeopardy. The district court agreed with this argument below and held that appellants had waived their double jeopardy claim because

defendants successfully sought to have the trials severed [which] precludes defendants from raising any double jeopardy claims. Defendant's motion to have the government elect which information would be the one on which the trial would proceed precipitated the trial court's 'severance.'

*Id.* at 378. The concept of waiver of double jeopardy was discussed in *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) in which a plurality of the Supreme Court found that there was no double jeopardy violation where the petitioner had opposed the government's motion to consolidate the trials on the two indictments. In *Jeffers,* petitioner challenged his conviction for engaging in a continuing criminal enterprise to violate drug laws because his earlier conviction for conspiracy to distribute narcotics was a lesser included offense of the continuing criminal enterprise charge. Prior to trial on the lesser offense, petitioner had opposed consolidation because of the possibility of jury confusion arising from trial with nine other co-defendants. He also expressed concern that he had been named in only 10 of the 17 alleged overt acts where much of the evidence in the conspiracy trial

5. *See supra,* n. 2.

would not inculpate him and would therefore be inadmissible against him in the continuing-criminal enterprise trial. *Jeffers*, 97 S.Ct. at 2212. In rejecting Jeffers' claim that trial on the lesser offense would constitute double jeopardy the Supreme Court explained that though

> a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election.

*Jeffers*, 97 S.Ct. at 2217. The Court also reasoned that trial together of the conspiracy and continuing criminal enterprise charges could have taken place without undue prejudice to petitioner's Sixth Amendment right to a fair trial [6] and defendant was solely responsible for the successive prosecutions of the two offenses. His action in opposing the government's motion to consolidate the two offenses deprived him of any right against consecutive trials that he might have had under the double jeopardy clause. *Jeffers*, 97 S.Ct. at 2218. Since a plurality of the Court agreed to the waiver rationale, we are convinced that the principles enunciated in *Jeffers* are controlling here. The rationale is consistent with prior and subsequent decisions that have refused to allow a defendant to claim double jeopardy from a later proceeding where the defendant was responsible for terminating the proceedings for reasons unrelated to factual guilt or innocence. *See Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (double jeopardy does not protect a defendant who pleads guilty to a lesser included offense because defendant's efforts contributed to the separate disposition of the counts); *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (defendant suffers no injury cognizable under the Double Jeopardy Clause if the government is permitted to appeal a dismissal of part of an indictment because the defendant deliberately sought termination of the proceedings against him on a basis unrelated to factual guilt or innocence).

Our review of the proceedings below, indicates that appellants' opposition to the consolidated trials was based both on the alleged prejudice that might have resulted as well as on double jeopardy grounds. Nevertheless, we are unpersuaded that the trial judge accepted any election theory which would have precluded the government from pursuing a subsequent prosecution on the federal information. Moreover, it is apparent that appellants were aware that the district court did not accept their election argument and that the court considered their motion as one for severance. The record indicates that during the conference in chambers, appellants accepted the district court's description of their motion as a request for a severance. (Blyden App. at 36). Appellants were also on notice that trial on the federal charges could proceed at a later date. The district court held that "it would grant a severance and thus force an election on the government." (Blyden App. at 48). It then provided that the government could try the remaining charges at a later date if it chose. *Id.* Appellants made no objection at that time and the record indicates that they even went so far as to discuss whether two jury panels should be chosen immediately. Therefore, however we may choose to construe or characterize appellants' motion, the fact still remains that they obtained separate trials as result of their objection, on a basis unrelated to factual guilt or innocence, to the government's motion for consolidation.

The instant case is a classic example of able lawyers pursuing what Roscoe Pound once called "the sporting theory of justice." [7] In essence it is as if one were

---

6. Had the two charges been tried together, defendant would have been entitled to a lesser included offense instruction. If such an instruction had been denied on the ground that the conspiracy offense was not a lesser included offense, defendant could have preserved his point by proper objection. *Jeffers*, 97 S.Ct. at 2217-18.

7. *See Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 2386, n. 1, 91 L.Ed.2d 18 (1986) (Stevens, J. dissenting) (citing Pound, "The Causes of Popular Dissatisfaction with the Ad-

flipping a coin yelling, "Heads I win; tails you lose." This case began with counsel urging that there should be trial on only one of the two informations. If the trial judge had not granted the severance to remedy the alleged "severe prejudice" and if any convictions had resulted, appellants most likely would now be arguing before us that it was an abuse of discretion for the trial judge to not have severed the trials. *See e.g., United States v. Sandini,* 888 F.2d 300 (3rd Cir.1989); *United States v. De Peri,* 778 F.2d 963 (3d Cir.1985); *United States v. Reicherter,* 647 F.2d 397 (3d Cir.1981). Although the judge granted them the severance they sought, they have now taken a more intensive position on the double jeopardy issue because they were acquitted on the Virgin Island charges. If the trial judge had fully appreciated the fact that they would later complain after they had received the severance they requested, he very well may not have given them the severance and directed that they proceed to a trial which consolidated the two informations.

■ It is well accepted that any double jeopardy problem resulting from the consolidated trials could have been resolved at the sentencing stage. *See Ohio v. Johnson,* 467 U.S. at 500, 104 S.Ct. at 2541 ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions or the same offense, the Clause does not prohibit the State from prosecuting ... for such multiple offenses in a single prosecution"). The consistent practice in this Circuit to remedy multiplicitous convictions that may implicate the Double Jeopardy clause is to require trial judges to impose a general sentence for all of said convictions. *See Gov't of Virgin Islands v. Dowling,* 633 F.2d 660 (3d Cir.1980); *Gov't of Virgin Islands v. Brathwaite,* 782 F.2d 399 (3d Cir.1986); *United States v. Gomez,* 593 F.2d 210 (3d Cir.1979). The instant case presents no circumstances that indicate that the imposition of a general sentence would not have been sufficient to remedy any double jeopardy problems arising from a consolidated

ministration of Justice," 29 American Bar Asso-

trial. The district court would have analyzed the potentially multiplicitous convictions under the *Blockburger* test, *see Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), to determine whether the respective territorial and federal offenses had identical statutory elements or whether any count from a particular information was a lesser included offense of the other. *See Grady v. Corbin,* — U.S. —, 110 S.Ct. 2084, 2090–91, 109 L.Ed.2d 548 (1990); *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). ("The *Blockburger* test was developed in the context of multiple punishments imposed in a single prosecution.") Under *Blockburger,* the district court would have made this determination by examining the offenses to see 1) if the territorial offense required proof of an additional fact which the particular federal offense did not, or 2) if the federal offense required proof of additional fact which the territorial offense did not. If the parallel offenses did not require proof of any additional facts, the district court would have addressed the attendant double jeopardy problem by imposing a general sentence for the potentially multiplicitous counts. Therefore, it is unlikely that the trial court judge granted the severance in this case for any reason except to address appellants' arguments about the alleged prejudice arising from Blyden's aliases. Accordingly, we can reach no other conclusion than that the appellants waived the right to argue double jeopardy when they successfully opposed a consolidated trial on the Virgin Islands and federal charges.

### III. CONCLUSION

For the foregoing reasons, we conclude that trial on the federal charges will not implicate the Double Jeopardy Clause. The judgement of the district court denying the motion to dismiss is affirmed.

ciation Report 395, 404–05 (1906)).