**UNITED STATES of America, Appellee,**

v.

**Steven Eugene JELINEK, Appellant.**

No. 94–2781.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided June 12, 1995.

emption. Thus, our conclusion that he intended to abandon his homestead claim fully comports with Arkansas law.

Merle N. Schneidewind, San Diego, CA, for appellant.

Kandice A. Wilcox, Cedar Rapids, IA, for appellee.

* THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

Before MAGILL and MURPHY, Circuit Judges, and GOLDBERG,* Judge.

MAGILL, Circuit Judge.

Steven Eugene Jelinek appeals his conviction and sentence of life imprisonment for operating a continuing criminal enterprise (CCE). Jelinek was also convicted of conspiracy to distribute methamphetamine, and was given a provisional life sentence. We affirm on all issues except the double jeopardy issue raised by Jelinek. In light of our disposition of the double jeopardy issue, we remand to the district court to vacate Jelinek's conviction on the conspiracy count (Count 1).

## I. BACKGROUND

Although the dealings of the actors are quite complex, they may be briefly stated insofar as they are relevant to this appeal. Jelinek was the leader of what the district court characterized as probably the most extensive drug conspiracy ever prosecuted in the Northern District of Iowa. Jelinek's drug distribution organization spanned more than a decade, included dozens of persons at various levels, and involved a quarter ton of methamphetamine in addition to substantial quantities of cocaine and marijuana. Different parties participated in the organization at different times, but in the typical operation, one or two members of the organization would travel from Iowa to California where they would purchase methamphetamine in one- to five-pound quantities. Occasionally, cars from Jelinek's brother's used car lot would be traded for all or part of the methamphetamine.

Once the methamphetamine was in Kansas, where Jelinek's brother lived, it would be cut and taken to Iowa, where it would typically be distributed among a small cadre of regular customers, or wholesalers, who further distributed it in smaller quantities. Occasionally, methamphetamine would be "fronted" to one of these regular customers

who would resell all or part of it in order to obtain the money to pay for it. In addition to these distribution activities, Jelinek and his associates took several steps in an unsuccessful attempt to manufacture methamphetamine.

Although several members of the organization were arrested over the course of the decade-long operation, the enterprise did not begin to unravel until Tim Stanek, a longtime member of the organization, became paranoid while returning to Iowa from California with twenty-five pounds of methamphetamine. Stanek ultimately turned himself in to police in Garden City, Kansas.

Jelinek was charged in a two-count indictment. Count 1 charged him with conspiracy to distribute and to possess with intent to distribute cocaine, marijuana and methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Count 2 charged Jelinek with operating a CCE in violation of 21 U.S.C. § 848. After a ten-day jury trial, Jelinek was convicted of both counts. At the sentencing hearing, the district court determined the adjusted offense level to be 47 and found Jelinek to be in criminal history category 1, resulting in a guideline range of life imprisonment. Accordingly, the district court sentenced Jelinek to life imprisonment on Count 2. The district court provisionally sentenced Jelinek to life imprisonment on Count 1, stating that "[i]n the event that the sentence imposed under Count 2 is reversed or dismissed on appeal, this provisional sentence shall take effect." Jelinek appealed the same day that judgment was entered.

## II. DISCUSSION

■ Jelinek's claimed errors stem from his CCE conviction. Section 848 of Title 21, which creates the crime of operating a CCE, defines a CCE as:

[A] person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this sub-

chapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c). We have interpreted this statute to require that five elements must be satisfied to establish a CCE violation. The defendant must commit:

1) a felony violation of the federal narcotics laws;

2) as part of a continuing series of [three or more related felony] violations [of federal narcotics laws];

3) in concert with five or more [other] persons;

4) for whom the defendant is an organizer[, manager] or supervisor;

5) from which he derives substantial income or resources.

*United States v. Maull,* 806 F.2d 1340, 1342 (8th Cir.1986) (quoting *United States v. Lewis,* 759 F.2d 1316, 1331 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985)), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987); *see also* 8th Cir. Model Crim.Jury Instr. 6.21.848A (1994).

Jelinek raises six issues on appeal, only three of which merit discussion. First, Jelinek argues that the district court erred in refusing to instruct the jury that it must unanimously agree on the identity of the five individuals managed by him. Second, Jelinek argues that the district court abused its discretion in submitting an aiding and abetting instruction to the jury where Jelinek was charged only with CCE and conspiracy. Third, Jelinek argues that the conviction and imposition of sentences for both CCE and conspiracy violates double jeopardy.

## A. Was a specific unanimity instruction concerning the identity of the five or more supervisees required?

■ Jelinek argues that the district court committed reversible error when it declined to give either Jelinek's requested instruction requiring the jury unanimously to agree on the identities of the individuals supervised by Jelinek or a special interrogatory to the same effect. We will reverse the district court's decision not to give a specific unanimity instruction only if it amounts to clear error. *United States v. Gruenberg,* 989 F.2d 971, 975 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993).

We hold that the district court did not clearly err when it refused Jelinek's proffered unanimity instruction and special interrogatory. We have never required unanimity as to the identities of the individuals supervised in order to establish a CCE violation. *See United States v. Rockelman,* 49 F.3d 418, 421 (8th Cir.1995).[1] In *United States v. Montanye,* 962 F.2d 1332, 1341 (8th Cir.1992) (subsequent history omitted) (*Montanye I*), we held that the district court's refusal of a specific unanimity instruction concerning the identity of the supervised individuals was not plain error. This opinion was subsequently vacated and a suggestion for rehearing en banc was granted. *Id.* at 1349. However, *United States v. Montanye,* 996 F.2d 190 (8th Cir.1993) (en banc) (*Montanye II*), specifically approved of the section of *Montanye I* containing the discussion of the unanimity instruction and footnote 7. *Id.* at 194.

In *Montanye I,* we noted that four other circuits had held that a specific instruction requiring unanimity as to the identities of the

five supervised individuals is not necessary. 962 F.2d at 1341 n. 7 (citing *United States v. Tarvers,* 833 F.2d 1068, 1073–75 (1st Cir. 1987); *United States v. Jackson,* 879 F.2d 85, 90 (3d Cir.1989); *United States v. Linn,* 889 F.2d 1369, 1374 (5th Cir.1989), *cert. denied,* 498 U.S. 809, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *United States v. English,* 925 F.2d 154, 159 (6th Cir.), *cert. denied,* 501 U.S. 1210, 111 S.Ct. 2810, 115 L.Ed.2d 983 (1991)). To the decisions of these four circuits, we add *United States v. Beverly,* 913 F.2d 337, 352–53 (7th Cir.1990), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991); *United States v. Moorman,* 944 F.2d 801, 803 (11th Cir.1991) (per curiam), *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1766, 118 L.Ed.2d 427 (1992); and *United States v. Harris,* 959 F.2d 246, 254–56 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992). *See also Rockelman,* 49 F.3d at 421 (collecting additional cases).[2] We believe that the Eleventh Circuit stated the lesson of these cases well when it said:

> The common rationale which runs through the decisions of the other Circuits is twofold. *First,* there is no general unanimity requirement as to a 'specific fact underlying an element' of an offense. *Second,* the criminal enterprise statute is concerned only with the size of the enterprise, not with the identities of the subordinates, which is irrelevant.

*Moorman,* 944 F.2d at 803; *accord Rockelman,* 49 F.3d at 421.

■ In light of the virtual unanimity of our sister circuits and the endorsement of footnote 7 by an en banc panel of this Court, we now explicitly hold that unanimity as to the identities of the five individuals supervised is not required in order to establish a

1. Although *Rockelman* decided that unanimity as to the identity of the five supervisees is not required, it did not address what effect the en banc decision in *Montanye II* had upon this decision.

2. The Ninth Circuit has adopted a slightly different approach. Under the Ninth Circuit's approach, a unanimity instruction is required where the defendant's relationship with some of the potential supervisees does not satisfy the definition of "supervise, organize or manage." *Unit-*

*ed States v. Jerome,* 942 F.2d 1328, 1331 (9th Cir.1991). Such an instruction is not required where all potential supervisees could have been supervised by the defendant. *See United States v. Garcia,* 988 F.2d 965, 969 (9th Cir.1993); *United States v. LeMaux,* 994 F.2d 684, 688 (9th Cir. 1993). The Tenth Circuit has recently adopted a similar approach. *United States v. Dago,* 33 F.3d 63, 1994 WL 387836 (10th Cir.) (unpublished), *cert. denied,* —— U.S. ——, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994).

CCE violation.[3] It follows, then, that a specific unanimity instruction concerning the identities of the supervised individuals is not required even in cases where the jury might focus upon different supervisees. Although use of an interrogatory in a complex case such as this would be wise practice, as it confirms the jury's conclusion that five persons were supervised, *see* 8th Cir.Model Crim.Jury Instr. 6.21.848A, Note on Use 2 (1994), use of such an interrogatory is not required, and failure to use it is not clear error. Accordingly, we affirm the district court in this regard.

**B. Did the trial court improperly instruct the jury that a defendant may be found guilty of CCE for aiding and abetting a kingpin?**

The question whether aiding and abetting liability is available under 21 U.S.C. § 848 is actually two separate questions. *United States v. Miskinis,* 966 F.2d 1263, 1267 (9th Cir.1992). The first question is whether an accused may be convicted of a CCE violation for committing the act of aiding and abetting a CCE. We have not decided this question, and case law is split in the circuits that have addressed the issue. *Compare United States v. Amen,* 831 F.2d 373, 381–82 (2d Cir.1987) (defendant cannot incur CCE liability for aiding and abetting kingpin), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988); *United States v. Benevento,* 836 F.2d 60, 71 (2d Cir.1987) (same), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Aiello,* 864 F.2d 257, 264 (2d Cir.1988) (same) *with United States*

*v. Pino–Perez,* 870 F.2d 1230, 1233–34 (7th Cir.) (en banc) (defendant may incur CCE liability for aiding and abetting kingpin), *cert. denied,* 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989).

The second question is whether aiding and abetting may establish the series of predicate offenses required to establish a CCE violation. The cases uniformly hold, and Jelinek concedes, that an aiding and abetting offense may be used as a predicate offense. *United States v. Baker,* 10 F.3d 1374, 1408 n. 16 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994); *Miskinis,* 966 F.2d at 1267–68; *Aiello,* 864 F.2d at 264; *see United States v. Duke,* 940 F.2d 1113, 1115 (8th Cir.1991) (affirming CCE and aiding and abetting convictions).

Jelinek argues that the aiding and abetting instruction given by the district court confused the jury because Jelinek was not separately charged with the predicate crimes. He argues that because there were no charged predicate crimes, the only charged crime to which the aiding and abetting instruction could have been applied was the CCE count. In essence, Jelinek asks this Court to reach the first question and to side with the Second Circuit. However, we need not address the first question because we reject Jelinek's claim that the instructions permitted the jury to convict Jelinek on the CCE count for aiding and abetting a kingpin.

First, Jelinek's argument is unsupported by the facts. The jury instructions were carefully worded so that there is no likelihood of confusion. Instruction No. 13 lists

---

**3.** *Montanye I* contains language addressing situations in which a unanimity instruction may be required:

> A general unanimity instruction usually protects a defendant's sixth amendment right to a unanimous verdict. A district court may have to give a specific unanimity instruction when a risk of jury confusion exists.

962 F.2d at 1341 (internal citations omitted). *Montanye I & II* involved a factual situation in which although eight participants were potential supervisees, there was no danger of jury confusion because the defendant's relation to all eight participants satisfied the definition of "supervise." Thus, in *Montanye I & II* it was unnecessary for this circuit to decide between the competing approaches of the Ninth and Tenth Circuits and other circuits. This case involves different facts: Over two dozen participants are

involved in Jelinek's organization, and we assume arguendo that, as in *Jerome,* the relation between Jelinek and some of these participants would not satisfy the definition of "supervise, organize or manage." Thus, this situation forces us to choose between the competing approaches and to decide the issue left unresolved in *Montanye I & II.* Unanimity instructions and the danger of jury confusion concerning a particular issue are only relevant if the jury must unanimously decide that issue. Because we hold that the jury need not unanimously agree as to the identities of the five supervised individuals, there is no need for a unanimity instruction even if the jury may be confused about specific identities, so long as the jury is able to unanimously agree that five individuals were in fact supervised. *See Moorman,* 944 F.2d at 803.

the elements of a CCE violation. Instruction No. 14, which contains the challenged aiding and abetting instruction, addresses only predicate offenses (which are listed as elements 1 and 2 in Instruction No. 13). Thus, the context of the aiding and abetting instruction clearly limited its application to predicate offenses. Moreover, the language used in the aiding and abetting portion of Instruction No. 14 repeatedly lists the predicate offenses to which aiding and abetting liability may be applied. In light of the context and language of this instruction, we believe that the likelihood of jury confusion was virtually nonexistent.

■ Second, this Court has affirmed convictions of both CCE and aiding and abetting violations.[4] *Duke,* 940 F.2d at 1115. Jelinek distinguishes *Duke* and similar cases by noting that those cases involve a substantive charge of aiding and abetting whereas Jelinek was not so charged. However, Jelinek's case is not any different than those he purports to distinguish. Instruction No. 13 required the jury to determine beyond a reasonable doubt that Jelinek committed a series of three or more violations of federal narcotics laws. Although Jelinek was not separately charged with the predicate offenses, the government was nevertheless required to prove them just as if Jelinek was separately charged with the predicate offenses. Thus, we reject Jelinek's distinction. Accordingly, we hold that the district court properly instructed the jury that Jelinek's criminal liability for the three predicate offenses may be established on an aiding and abetting theory. Because we find that the carefully crafted jury instructions created no likelihood of jury confusion, we need not decide whether Jelinek could be convicted of CCE for aiding and abetting a kingpin.

## C. Does the procedure used by the district court place Jelinek in double jeopardy?

■ In *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the Supreme Court decided that conspiracy was a lesser included offense of CCE and that a defendant may not, therefore, stand convicted of both offenses because "the convictions punish twice for the same conduct." *United States v. Holt,* 969 F.2d 685, 687 (8th Cir.1992); *accord Duke,* 940 F.2d at 1120.[5] The only issue involved in this appeal is the proper procedure to be followed to permit adjudication of both counts while preserving Jelinek's right to be free from double jeopardy.

■ Jelinek argues that the jury may consider only one count, or else the defendant is subjected to double jeopardy. While it is a permissible procedure to submit only one count to the jury on the defendant's motion, the defendant's insistence upon this procedure amounts to a motion for severance of the two counts, and therefore waives any double jeopardy objection to retrial on the remaining count. *United States v. Blyden,* 930 F.2d 323, 327–28 (3d Cir.1991). More importantly, although this procedure is permissible, it is not required.

■ We have previously approved a procedure under which we "review the merits of both convictions and remand to the district court to vacate one of them, assuming both were (apart from the double-jeopardy point) upheld." *Holt,* 969 F.2d at 687 n. 1; *see, e.g., Duke,* 940 F.2d at 1120–21; *Maull,* 806 F.2d at 1346–47. Where the district court has decided which count is to be dismissed, we remand for dismissal of that count. *Holt,* 969 F.2d at 687 n. 1, 689. This remand procedure increases judicial economy, and benefits not only the court, but also the defendant and the government, who are not subjected to expense and inconvenience of duplicative trials. Accordingly, because we affirm the CCE conviction and sentence, we remand this case to the district court to vacate Jelinek's conviction on the conspiracy count.

---

4. Of course, in order to convict of an aiding and abetting offense, the jury must receive an aiding and abetting instruction. In *Duke,* no challenge was made to this instruction.

5. No double jeopardy is created by the contingent imposition of a sentence because the provisional sentence has no effect unless the first conviction and sentence is overturned. However, the dual conviction of conspiracy and CCE is sufficient to create double jeopardy.

### III. CONCLUSION

We hold that the district court properly refused to give a unanimity instruction concerning the identities of the five or more individuals supervised by Jelinek. We also hold that the district court did not abuse its discretion in giving an aiding and abetting instruction that limited aiding and abetting liability to predicate offenses and thus did not create any likelihood of jury confusion. We have reviewed Jelinek's remaining contentions and (with the exception of the double jeopardy claim) find them to be without merit. Because we affirm Jelinek's CCE conviction and sentence, we remand this case to the district court to vacate Jelinek's conviction on the conspiracy count.