# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3770

_____

United States of America,       *
                                    *

         Appellee,          *
                                    *

    v.                       *
                                    *

Durrell Kaye Jackson,       *
                                    *

         Appellant.       *

_____             Appeal from the United
                                 States District Court
No. 02-3910             For the Northern District
                                 of Iowa
_____

United States of America,       *
                                    *

         Appellee,          *
                                    *

    v.                       *
                                    *

Dentonious Neville Washington, also *
known as Neal, also known as Neil,   *
also known as Buck Mouth,       *
                                    *

         Appellant.       *

_____

No. 02-3937

_____

United States of America,       *
                                    *

         Appellee,          *

|                                        | *  |
|----------------------------------------|----|
| v.                                     | *  |
|                                        | *  |
| Arthur Mabry, also known as Oscar,     | *  |
|                                        | *  |
| Appellee,                              | *  |

_____

Submitted: June 10, 2003
Filed: September 29, 2003

_____

Before MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

After a lengthy trial in the district court,[2] a jury convicted Durrell Kaye Jackson, Dentonious Neville Washington, and Arthur Eugene Mabry of participating in a drug-related conspiracy. Jackson was also found guilty of operating a continuing criminal enterprise (CCE). Both Jackson and Washington were additionally convicted of violating numerous other federal criminal statutes. Jackson's convictions resulted in the imposition of two life sentences and one provisional life sentence. Each defendant now appeals. We affirm, but remand for the vacation of Jackson's conspiracy conviction.

---

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa. Judge Melloy has since been appointed United States Circuit Judge for the Eighth Circuit and currently serves in that capacity.

## I. FACTUAL AND PROCEDURAL BACKGROUND

An extensive amount of evidence was presented to the jury, however, we limit our discussion to those facts which are necessary to resolve the issues raised on appeal. In 1991, Jackson was prosecuted by the Northern District of Iowa on drug-related charges. Upon the completion of his prison sentence in 1995, Jackson returned to Waterloo, Iowa, on supervised release. On numerous occasions in 1996, Jackson tested positive for marijuana. Jackson's marijuana use violated the conditions of his supervised release and he eventually served an additional four months in prison.

After his initial release from custody in 1995, Jackson became extensively involved in cocaine trafficking; receiving assistance in varying degrees from Washington, Mabry, and others. Large quantities of cocaine, either powder or cocaine base (crack), were transported to Waterloo from Chicago, Illinois, Milwaukee, Wisconsin, and several additional locations. On many occasions, Jackson paid couriers to deliver the drugs or participated directly with the assistance of female companions. On one occasion, law enforcement officers intercepted 1980 grams of cocaine powder which Jackson attempted to ship through the United Parcel Service. With respect to the cocaine that successfully arrived in Waterloo, Washington and others "cooked" the powder into crack. The crack was ultimately distributed by Jackson, Washington, Mabry, and numerous other individuals.

On June 14, 2000, after performing a lengthy investigation into the illegal activities of the individuals involved in this drug distribution scheme, law enforcement officers applied for a wiretap order seeking authorization to intercept Washington's cellular telephone calls. The application was supported by a 39-page affidavit of Special Agent Scott Gray of the Federal Bureau of Investigation. Finding probable cause to believe that the individuals listed, including Jackson, Washington, and Mabry, were committing and would continue to commit offenses involving

3

controlled substances and using a communication device to facilitate those violations, the district court granted the application.

The evidence gained as a result of the communications intercepted by the wiretap, as well as through conventional investigative techniques, resulted in a six count indictment which was returned on October 26, 2000. A 19 count superseding indictment was subsequently filed on November 15, 2000. Jackson, Washington, and Mabry were charged with conspiring to distribute cocaine, crack, and marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The conspiracy count also alleged that the three defendants distributed cocaine and crack to persons under the age of 21 in violation of 21 U.S.C § 859, and that the defendants, in violation of 21 U.S.C. § 861(a)(1), used or persuaded a person under the age of 18 to violate federal drug laws. Jackson was additionally charged in separate counts with aiding and abetting the distribution of 4.9 grams of crack, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 851 and 18 U.S.C. § 2; engaging in a CCE, in violation of 21 U.S.C. § 848(a), (b), and (c); attempting to distribute 1980 grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) and 851; and five additional counts of using a communication device in causing and facilitating the commission of a felony, in violation of 21 U.S.C. § 843(b). In addition to the conspiracy allegation, Washington was charged in three separate counts with distributing crack in quantities ranging from 13.1 grams to 26.1 grams, as well as distributing five or more ounces of marijuana in violation of Sections 841(a)(1) and (b)(1)(B), and 851. Washington was also charged with nine counts of using a communication device in causing and facilitating the commission of a felony in violation of Section 843(b).

Prior to trial, Washington filed a suppression motion,[3] arguing that the wiretap application failed to establish the necessity for the investigative tool and the evidence gained as a result of the intercepted communications therefore was inadmissable at

---

[3] Jackson orally joined Washington's suppression motion.

trial. The district court[4] denied the motion. Trial of this matter began on February 5, 2002, and the jury began deliberations on February 28, 2002. On March 1, 2002, the jury found Jackson and Washington guilty of each offense charged against them in the indictment. Mabry was found guilty of conspiring to distribute 50 grams or more of crack and 500 grams or more of cocaine.

On October 18, 2002, Jackson received concurrent life sentences for his CCE conviction and his attempt to distribute 1980 grams of cocaine. The district court imposed a provisional life sentence on the conspiracy conviction pending appellate review of the CCE conviction. Jackson received lesser sentences for his remaining convictions. Washington and Mabry were sentenced on November 14, 2002. The district court determined that both Washington and Mabry had a sentencing range of 360 months to life in prison. However, the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and the district court sentenced Washington and Mabry to 20 years imprisonment for their participation in the conspiracy. Washington received concurrent sentences for his remaining convictions. Jackson, Washington, and Mabry each appeal, raising issues both individually and collectively.

## II. DISCUSSION

A. Wiretap Necessity

Washington argues that in seeking the wiretap authorization, the government failed to satisfy the necessity requirement of 18 U.S.C. § 2518 and, therefore, the district court erred in denying his motion to suppress the evidence obtained as a result of the intercepted communications. Jackson adopts the arguments raised by

---

[4] The Honorable Mark W. Bennett, Chief United States District Judge for the Northern District of Iowa presided over the suppression motions related to the wiretap authorization approved by Judge Melloy. Judge Bennett accepted a recommendation to deny the suppression of the evidence by the Honorable John A. Jarvey, Chief United States Magistrate Judge for the Northern District of Iowa.

Washington for the purpose of this appeal. "We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving 'due weight' to the inferences of the district court and law enforcement officials." United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002). The necessity finding made prior to a district court's authorization of a wiretap is a factual determination. See United States v. Thompson, 210 F.3d 855, 859 (8th Cir. 2000).

The necessity requirement of § 2518 insures "'that wiretaps are not routinely employed as the initial step in an investigation.'" Id. at 858-859 (quoting United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994)). To satisfy the requirement, an application requesting a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c): See also Thompson, 210 F.3d at 858. Having reviewed the affidavit supporting the application, we find that the district court's necessity finding under § 2518 was not clearly erroneous.

The wiretap was requested for the purpose of discovering the full scope of the conspiracy, the full extent of the criminal activities, and to identify and successfully prosecute each member of the organization. If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied. Id. at 859 (citing Maxwell, 25 F.3d at 1394; United States v. Smith, 909 F.2d 1164, 1166 (8th Cir. 1990); United States v. Macklin, 902 F.2d 1320, 1327 (8th Cir. 1990); United States v. O'Connell, 841 F.2d 1408, 1414-15 (8th Cir. 1988)). Agent Gray's affidavit states, with detail, the conventional investigative techniques utilized by law enforcement officers over a period of several years. The methods included surveillance, confidential informants, trash collections, pen registers and toll record information, grand jury subpoenas, search warrants, and witness interviews. The affidavit indicates the difficulties law enforcement officers encountered and explained why the investigative methods which were attempted

6

failed to discover the full scope of the conspiracy. For instance, physical surveillance was largely unsuccessful because Jackson generally appeared to be aware of the presence of the officers; trash collections had been attempted with successful results but were not likely to establish the extent of the conspiracy; and confidential informants were proving to be of limited value because they were providing historical information, were presently incarcerated, or were refusing to cooperate.

Traditional investigative techniques had undoubtedly provided law enforcement officials with sufficient evidence to pursue prosecution of Washington and Jackson for drug-related offenses. Trash collections had provided evidence of drug possession and distribution, and informants had made controlled purchases from Washington and provided valuable insight into the organization. Had the purpose of the wiretap been to investigate the illegal activities of only Washington or Jackson, a necessity finding would have been erroneous. However, the facts of this case do not present such a situation. The focus of this application was upon the conspiracy itself, not merely those individuals who were involved and the government adequately established their need for a wiretap. The district court's necessity finding was not clearly erroneous and the motion to suppress was properly denied.

B.  Sufficiency of the Evidence

With regard to his CCE conviction, Jackson challenges the sufficiency of the evidence supporting both the jury's special interrogatory findings as well as the district court's factual findings at his sentencing. Jackson argues that the evidence was insufficient to establish that he acted with five or more persons for whom he was an organizer, manager, or supervisor. Further, he contends that the evidence does not support a finding that his violation involved 1.5 kilograms of crack. The evidence supports the jury's special verdict findings and we affirm Jackson's CCE conviction. Moreover, the evidence supports the district court's leadership and drug quantity determinations and we also affirm the imposition of Jackson's life sentence.

7

In reviewing the sufficiency of the evidence, we consider the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003). Jury verdicts are not overturned lightly, United States v. James, 172 F.3d 588, 591 (8th Cir. 1999), and "[w]e will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt." Espino, 317 F.3d at 792. With respect to the district court's factual findings at sentencing, they are reviewed for clear error. United States v. Scolaro, 299 F.3d 956, 957 (8th Cir. 2002).

The special verdict questions were designed to assist the jury in determining whether Jackson engaged in a CCE. The elements of § 848, the CCE statute, are met if the defendant commits:

1) a felony violation of the federal narcotics laws;
2) as part of a continuing series of [three or more related felony] violations [of federal narcotics laws];
3) in concert with five or more [other] persons;
4) for whom the defendant is an organizer [, manager] or supervisor;
5) from which he derives substantial income or resources.

United States v. Jelinek, 57 F.3d 655, 657 (8th Cir. 1995) (citations omitted). Further, several of the special verdict questions focused on § 848(b), which mandates that a person engaging in a CCE be imprisoned for life if that person was "the principal administrator, organizer, or leader of the enterprise" and the violation involved either "300 times the quantity" of a substance specified in § 841(b)(1)(B),[5] or, the enterprise

---

[5] The substance specifications and the applicable drug quantities are found in § 841(b)(1)(B). In this case, the special verdict question was based upon § 841(b)(1)(B)(iii), which requires a quantity of 5 grams or more of crack. 300 times 5 grams equals 1.5 kilograms of crack.

"received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution" of the substance.[6]

We note that "'[t]he basic outlines of the ... management element have been liberally construed.'" United States v. Roley, 893 F.2d 992, 994 (8th Cir. 1990) (quoting United States v. Possick, 849 F.2d 332, 335 (8th Cir. 1988) (citations omitted)). The terms "organizer," "manager," and "supervisor" are interpreted according to their plain meaning. Possick, 849 F.2d at 335 (citations omitted). This element of the CCE statute is satisfied if "the defendant exerted some type of influence over another individual as exemplified by that individual's compliance with the defendant's directions, instructions, or terms." Id. (citing United States v. Grubbs, 829 F.2d 18, 19-20 (8th Cir. 1987) (per curiam); United States v. Lueth, 807 F.2d 719, 732 (8th Cir. 1986); United States v. Jones, 801 F.2d 304, 310 (8th Cir. 1986)). Although the defendant need not manage five individuals at one time, Possick, 849 F.2d at 335, a mere buyer-seller relationship is not sufficient to satisfy the management element. Roley, 893 F.2d at 995 (citing United States v. Butler, 885 F.2d 195, 201 (4th Cir. 1989)). With these principles in mind, we address Jackson's arguments.

The jury determined that Jackson managed or supervised Washington, Mabry, Carlos Rondell Phillips, Greg Watson, John L. Humphrey, Sarah Harken, Jill Fosselman, Vinneator Bruce (via Washington), and Curtis Austin. Absent Washington and Mabry, the government presented the testimony of each of these individuals to the jury. Harken and Fosselman testified that they made numerous trips to Chicago and Milwaukee with Jackson and Mabry. Harken and Fosselman normally returned to Waterloo in rental vehicles while Jackson and Mabry drove

---

[6] Jackson argues that the government did not prove that he received $10 million dollars in gross receipts during any twelve-month period. Section 848(b)(1) requires proof of either drug quantity or gross receipts, not both. The government submitted evidence of drug quantity and was not required to prove Jackson's gross receipts.

separately. Jackson paid for the rental cars, provided the couriers with specific instructions on driving, where to leave the vehicle, and to refuse consent if a law enforcement officer sought to search the vehicle. Humphrey, also a courier, testified that he made three trips to secure cocaine at Jackson's request. Humphrey was provided with a rental vehicle for the trips, was promised $1,000 for each trip, and received, from Jackson, a portion of the funds. In addition to purchasing crack and powder cocaine from Jackson, another courier, Austin, testified that he was recruited and paid $2,000 to transport drugs across Waterloo. Jackson clearly directed these individuals at various times throughout the course of the conspiracy's existence. By providing specific orders which these individuals followed, Jackson was acting within the supervisory context contemplated by the CCE statute.

Evidence presented by the government demonstrates that Jackson also supervised Washington, Mabry, Phillips, and Watson. Numerous witnesses testified that Washington acted as the cook who processed Jackson's powder cocaine into crack; at least one witness who attempted to purchase crack from Jackson was referred to Washington; and on numerous occasions, Mabry and Phillips delivered crack to purchasers on behalf of Jackson. While Washington, Mabry, Phillips, and Watson each sold crack on Jackson's behalf, the relationship between these individuals and Jackson was beyond that of a mere buyer-seller. Even without Bruce, whose connection to Jackson through Washington is somewhat tenuous, sufficient evidence existed by which a jury could have found, beyond a reasonable doubt, that Jackson violated the CCE statute by acting as a supervisor, manager, or organizer of five or more persons and that he also was the principal administrator, organizer, and leader of the enterprise. The same evidence supports the district court's identical determination at Jackson's sentencing.

Jackson also claims that insufficient evidence supported the jury's finding that his offense involved at least 1.5 kilograms of crack. The district court agreed with the jury's drug quantity determination and imposed a life sentence pursuant to

§848(b). The district court's drug quantity finding is not clearly erroneous. The government introduced the testimony of many witnesses who purchased crack directly from Jackson. One witness, Orlando Fisher, testified that he alone purchased 4 to 5 kilograms of cocaine, most of it having been processed into crack, from Jackson, over a six-month period. Another witness, Jean St. Paul Cooper, testified that he delivered to Jackson, from Chicago, 10 to 15 kilograms of crack. In short, overwhelming evidence supports both the jury and the district court's quantity determinations.

With regard to Jackson's insufficient evidence arguments, his attempts to illustrate the perceived inconsistencies in witness testimony is unavailing. It is not our position to judge the credibility of witnesses when reviewing the sufficiency of the evidence. United States v. Anderson, 78 F.3d 420, 422-423 (8th Cir. 1996) (citation omitted). Similarly, Jackson's argument that the district court committed an error in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), at sentencing is without merit. In Apprendi, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. at 2362-2363. Under the CCE statute, the statutory maximum sentence is life in prison and Apprendi does not apply to this particular situation. See United States v. Hill, 252 F.3d 919, 721 (7th Cir. 2001) cert. denied. 536 U.S. 962, 122 S.Ct. 2669, 153 L.Ed.2d 842 (2002). The district court was not required to submit the principal organizer and drug quantity special interrogatories to the jury. However, we find no error with this cautious approach as well as the district court's agreement with the jury's factual findings.

Mabry also raises an insufficient evidence argument, claiming the evidence did not establish that he participated in a drug-related conspiracy and the district court erred by denying his motion for judgment of acquittal. With respect to a motion for judgment of acquittal, the standard of review on appeal is the same as that of the district court. United States v. Earles, 113 F.3d 796, 802 (8th Cir. 1997). A court

11

should only grant a motion for judgment of acquittal "'where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged.'" Id. 802 (quoting United States v. Mundt, 846 F.2d 1157, 1158 (8th Cir. 1988)). A reasonable jury could have found Mabry guilty of participating in a conspiracy to distribute cocaine and crack and we affirm the district court's denial of Mabry's motion for judgment of acquittal.

"In order to prove the existence of a conspiracy, 'the government must show an agreement between at least two people and that the agreement's objective was a violation of the law.'" United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996) (quoting United States v. Escobar, 50 F.3d 1414, 1419 (8th Cir. 1995)). Proof of a formal agreement is unnecessary; a tacit understanding is sufficient, United States v. Hoelscher, 914 F.2d 1527, 1534, (8th Cir. 1990) cert. denied 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991), and can be proved by direct or circumstantial evidence. Jenkins, 78 F.3d at 1287. "Although not sufficient by itself, association or acquaintance among the defendants supports an inference of conspiracy." United States v. Sparks, 949 F.2d 1023, 1027 (8th Cir. 1991).

The evidence introduced at trial clearly demonstrated Mabry's involvement in distributing crack in Waterloo. However, Mabry acted in a capacity beyond that of an independent crack dealer. Mabry accompanied Jackson on cocaine procurement trips; assisted Jackson in breaking down powder cocaine so Washington could cook the powder into crack; helped Jackson weigh and package the crack; aided in recovering Jackson's cocaine, which was stolen by John Humphrey; and delivered crack with Jackson or on Jackson's behalf on numerous occasions. After hearing this substantial amount of circumstantial evidence connecting Mabry and Jackson, a reasonable jury could have found, beyond a reasonable doubt, that Mabry conspired with Jackson to distribute cocaine and crack. The district court appropriately denied Mabry's motion for a judgment of acquittal.

C. Withdrawal From the Conspiracy

Mabry also argues that the district court erred by failing to provide the jury with an instruction concerning his defense theory that he withdrew from the conspiracy. A district court's jury instructions are reviewed for abuse of discretion. See Mems v. City of St. Paul, Dept. of Fire and Safety, 327 F.3d 771, 781 (8th Cir. 2003). "Our review is limited in scope: we ask 'whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.'" Id. (quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001)). In light of the evidence and the applicable law, the district court did not abuse its discretion by failing to provide the jury with a withdrawal instruction.

In order to withdraw from a conspiracy, a defendant "must demonstrate that he took affirmative action to withdraw from the conspiracy by making a clean breast to the authorities or by communicating his withdrawal in a manner reasonably calculated to reach his coconspirators." United States v. Zimmer, 299 F.3d 710, 718 (8th Cir. 2002) (citing United States v. Granados, 962 F.2d 767, 773 (8th Cir. 1992), United States v. Askew, 958 F.2d 806, 812-13 (8th Cir. 1992)). A cessation of activities, alone, is not sufficient to establish a withdrawal from the conspiracy. Zimmer, 299 F.3d at 718 (citing Granados, 962 F.2d at 773).

Mabry's relationship with Jackson soured in 1999 after Jackson confronted and accused Mabry of stealing crack. After this falling out, Mabry no longer traveled with Jackson to procure cocaine. Moreover, Eugene Mitchell, who was working with the government, testified that he was unable to purchase crack from Mabry because Mabry did not have a significant quantity available. Mabry neither voluntarily ceased his involvement in the drug distribution scheme nor contacted authorities in an attempt to separate himself from Jackson. Mabry took no affirmative steps to withdraw from the conspiracy, therefore, the district court properly denied his request for a withdrawal instruction.

13

D. Jackson's Remaining Arguments

Jackson argues that the special interrogatories created an impermissible variance between the time frame of the conspiracy alleged in the indictment and the proof at trial. During Jackson's first term of imprisonment, he was housed with Basil Levy,[7] a man who eventually became one of Jackson's major cocaine suppliers. The formation of this relationship apparently served as the basis for the superseding indictment's allegation that the conspiracy began in August 1993. At sentencing, the district court found that the conspiracy began after Jackson was released from prison in September 1995. Jackson argues that the jury was erroneously allowed to hear evidence of drug transactions which took place prior to September 1995, and the variance may have resulted in the jury attributing to him an improper drug quantity. We reject Jackson's argument.

"'[A] variance between the date in the pleading and the proof is not fatal if the proof shows that the acts charged were committed within the period of the statute of limitations and prior to the date of the [indictment], as long as the date is not a material element of the offense, and the defendant is not prejudiced.'" United States v. Duke, 940 F.2d 1113, 1120 (8th Cir. 1991) (quoting United States v. Collins, 690 F.2d 670, 673 (8th Cir. 1982)). The time period is not a material element of a conspiracy offense and all of the evidence introduced at trial fell within the conspiracy period alleged in the superseding indictment. Additionally, Jackson has not argued that he was unable to adequately prepare for trial. Because "[a] defendant is not prejudiced when he 'could reasonably have anticipated the evidence presented at trial from the indictment,'" Duke, 940 F.2d at 1120 (quoting United States v. Shyres, 898 F.2d 647, 653 (8th Cir. 1990) cert. denied 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990), we find that no fatal variance has occurred. Moreover, if any error occurred, it was harmless. Our review of the record indicates that the drug

---

[7] Levy was extradited from Canada and convicted in a separate trial of conspiring to distribute cocaine and crack in July 2002.

quantity, which was attributed to the conspiracy prior to September 1995, resulted from the minor distribution activities of Washington. This amount is trivial compared to the total drug quantity the defendants were ultimately held responsible for distributing.

Next, Jackson argues that the district court erred in denying his motion for downward departure. Jackson argues that law enforcement officers improperly engaged him in undercover drug sales and purchases for the sole purpose of driving up his sentence under the sentencing guidelines. Under the facts and circumstances of this case, where law enforcement officers were investigating a large conspiracy, this argument is without merit. Under such circumstances, law enforcement officers are entitled to continue dealing with an individual with whom they have already engaged in illegal transactions in order "to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy." United States v. Shephard, 4 F.3d 647, 649 (8th Cir. 1993) (citation omitted).

In seeking a downward departure, Jackson also argues that the United States Probation Office (probation office) violated his constitutional right to due process by participating in unlawful law enforcement conduct. The district court addressed this issue at sentencing before determining that there were no grounds for a departure. It is well settled that "[a] district court's refusal to grant a downward departure is generally unreviewable on appeal, unless the district court had an unconstitutional motive or erroneously believed that it was without authority to grant the departure." United States v. Gonzalez-Lopez, 335 F.3d 793, 799 (8th Cir. 2003) (citing United States v. Young, 315 F.3d 911, 914 (8th Cir. 2003) cert. denied ---U.S. ---, 123 S.Ct. 2108, 155 L.Ed.2d 1081 (2003). We have carefully reviewed this issue and find no violation of Jackson's constitutional right to due process. Accordingly, the district court's decision not to depart is not reviewable.

Finally, Jackson argues that the district court's imposition of a life sentence on the CCE conviction and a provisional life sentence on the conspiracy conviction constitutes double jeopardy. This court has previously determined that "[n]o double jeopardy is created by the contingent imposition of a sentence because the provisional sentence has no effect unless the first conviction and sentence is overturned." Jelinek, 57 F.3d at 660 n.5. In addition, Jelinek instructs that the proper procedure for this court is to review the merits of both the CCE and conspiracy convictions, and, if both are upheld, remand the case to the district court to vacate one of the convictions. Id. (citations omitted). We have upheld the CCE conviction and the imposition of a life sentence. Accordingly, we remand this case to the district court to vacate Jackson's conspiracy conviction. In all other respects, we affirm the judgment of the district court.

————————————————————